FILED
Clerk
District Court

NOV - 8 2005

For The Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

|  |  |
|---|---|
| | Case No. CR-05-00023 |
| UNITED STATES OF AMERICA, | ORDER: |
| Plaintiff, | 1) DENYING MOTION TO DISMISS COUNT 3; |
| vs. | 2) DENYING MOTION TO COMPEL DISCOVERY; and |
| JUAN QUITUGUA, | 3) DENYING MOTION TO SEVER |
| Defendant. | |

THIS MATTER came before the court on Thursday, November 3, 2005, for hearing of defendant's motion to dismiss, defendant's motion to compel discovery, and defendant's motion to sever under Federal Rules of Criminal Procedure 8 and 14. Plaintiff appeared by and through its attorney, Assistant U.S. Attorney Timothy E. Moran; defendant appeared by and through his attorney, G. Anthony Long.

On August 25, 2005, the grand jury charged defendant with distribution and possession with intent to distribute a controlled substance under 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(c) ("Count 1"), with possession with intent to distribute a controlled substance under 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(c) ("Count 2"), and as a user in possession of a firearm under 18 U.S.C. § 922(g)(3) ("Count 3").

Defendant makes three motions: (1) motion to dismiss for lack of subject matter jurisdiction, or alternatively, on grounds that the government, as a matter of law, cannot prove the commerce transaction element of Count 3; (2) motion to compel discovery on grounds that the government has

not complied with initial discovery requirements and that the government did not specifically object to each of defendant's requests for disclosure; and (3) motion to sever under Federal Rules of Criminal Procedure 8 and 14 on grounds that joinder causes an improper spillover effect and, thus, improperly prejudices defendant.

THE COURT, having fully considered the written and oral arguments of the parties, hereby denies defendant's motion to dismiss, denies defendant's motion to compel discovery, and denies defendant's motion to sever under both Federal Rules of Criminal Procedure 8 and 14.

## I. Motion to Dismiss Count 3

Defendant moves the court to dismiss Count 3. While defendant states that the ground for dismissing Count 3 is for lack of subject matter jurisdiction, he also suggests that, as an alternative, the court must dismiss Count 3 because, as a matter of law, the government cannot prove the commerce transaction element.[1]

## A. Motion to Dismiss Count 3 for Lack of Subject Matter Jurisdiction

Defendant moves the court to dismiss Count 3 for lack of subject matter jurisdiction. Defendant suggests two lines of reasoning. Defendant first suggests the following. Under section 501 of the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America ("Covenant"), 48 U.S.C. § 1801 (1993), the Commerce Clause,

---

[1] While defendant states his ground for dismissal based on lack of subject matter jurisdiction, defendant stated in his memorandum supporting his motion that "[d]ismissal of Count 3 is appropriate because the prosecution cannot prove the essential jurisdictional element or hook in this case." Defendant's Memorandum Supporting Dismissal of Count Three at 2 (Sept. 8, 2005). In defendant's reply brief, he further states that "the prosecution appears to confuse subject matter jurisdiction with the ability to prove an essential element of the charge[,]" Defendant's Reply Supporting Initial Pretrial Motions at 1 (Sept. 29, 2005), suggesting that defendant's ground for dismissal is that the government, as a matter of law, cannot prove an element of Count 3.

Art. I, § 8, cl. 3, does not apply to the Commonwealth of the Northern Mariana Islands ("CNMI" or "Commonwealth"). Defendant asserts that because the Covenant does not extend the Commerce Clause to the CNMI, the Commerce Clause cannot serve as a basis for jurisdiction. Defendant continues that since 18 U.S.C. § 922(g)(3), the statute upon which Count 3 is based, was passed under Congress' interstate commerce power, the court must dismiss Count 3 for lack of subject matter jurisdiction.

This line of reasoning is flawed for at least two reasons. First, while defendant is correct that the Commerce Clause does not directly apply in the CNMI, the court does not base its subject matter jurisdiction solely on any provision of the U.S. Constitution. Rather, because of the "'unique' relationship between the United States and the CNMI," the Covenant is the sole source of the federal government's power in the CNMI. United States ex rel. Richards v. Leon Guerrero, 4 F.3d 749, 754 (9th Cir. 1993) ( "[I]t is solely by the Covenant that we measure the limits of Congress' legislative power [in the CNMI]."). Accordingly, the court's subject matter jurisdiction derives only from the Covenant.

Here, the alleged acts took place in the CNMI so the jurisdiction of the court is governed by the Covenant. In particular, § 502(a)(2) of the Covenant provides the court with jurisdiction over this case. Leon Guerrero, 4 F.3d at 754 (dicta) (explaining that "Section 502 governs the application to the CNMI of federal laws existing prior to January 9, 1978, and that Section 105 governs the application of federal laws enacted after that date."). As a threshold matter, § 502(a)(2) requires that the pertinent law must have existed before January 9, 1978, or that the pertinent law is a subsequent amendment of a law that existed before January 9, 1978. If the pertinent law satisfies the threshold, § 502(a)(2) provides a two-part test: (1) that the pertinent law is applicable to Guam; and (2) that the pertinent law "[is] of general application to the several States as [it is] applicable to the several States." Covenant § 502(a)(2); Saipan Stevedore Co. v. Dir. of the Office of Workers' Comp. Programs, 133 F.3d 717, 721 (9th Cir. 1998) (stating effective date of § 502 is January 9, 1978).

Following this course of analysis, 18 U.S.C. § 922(g)(3) originates from the Gun Control Act of 1968, Pub. L. 90-618, 82 Stat. 1213. Furthermore, the Gun Control Act applies to Guam and the several States. See, e.g., United States v. Purdy, 264 F.3d 809 (9th Cir. 2001) (applying § 922(g)(3) in Washington State); United States v. Perez, 67 F.3d 1371 (9th Cir. 1995) (applying § 922(g) in Guam), rev'd en banc on other grounds, 116 F.3d 840 (9th Cir. 1997), remanded to 129 F.3d 1340 (9th Cir. 1997). Accordingly, the court has subject matter jurisdiction over this case.

Second, defendant's contention that Fleming v. Department of Public Safety, Commonwealth of Northern Mariana Islands, 837 F.2d 480 (9th Cir. 1992), overruled on other grounds DeNieva v. Reyes, 966 F.2d 480 (9th Cir. 1992), supports his argument that the Gun Control Act does not fall within the court's § 502(a)(2) jurisdiction is misplaced. Defendant argues that the Ninth Circuit in Fleming looked at the constitutional component of 42 U.S.C. § 1983 before determining whether the district court had jurisdiction under § 502(a)(2). Furthermore, Defendant argues that like Eleventh Amendment immunity, 18 U.S.C. § 922(g)(3) does not apply in the CNMI.

Defendant's first argument --- that the Ninth Circuit in Fleming looked to the constitutional component of 42 U.S.C. § 1983 before determining the applicability of § 502(a)(2) --- is in error. In Fleming, the Ninth Circuit found that 42 U.S.C. § 1983 applies in the CNMI. 837 F.2d at 404-05. In doing so, the Ninth Circuit applied the two part test of § 502(a)(2). The Ninth Circuit stated that because § 1983 was enacted before January 9, 1978, and it applies to Guam and the several States, § 1983 passes the strictures of Covenant § 502(a)(2). Id. At no time did the Ninth Circuit determine whether 42 U.S.C. § 1983 was passed under any of the provisions of the U.S. Constitution enumerated in § 501 of the Covenant.[2]

---

[2] In fact, the Ninth Circuit in Hillblom v. United States, 896 F.2d 426, 431 n.3 (9th Cir. 1990) (dicta), supports the court's decision. In dicta, the Ninth Circuit stated that Congress did not "inten[d] to govern the CNMI through the territorial clause or the commerce clause, in violation of the Covenant." The Ninth Circuit based this comment on deeming both the Magnuson-Stevens Fishery Conservation and Management Act, 16 U.S.C. § 1802(21), and the Swine Health Protection Act, 7 U.S.C. § 3802(4), as compliant with § 502(a)(2) of the Covenant. Id. The predecessor statute of the Magnuson-Stevens Fishery Conservation and Management Act was enacted on April 13,

Defendant's second argument --- that Eleventh Amendment immunity is analogous to 18 U.S.C. § 922(g)(3) --- misinterprets the Ninth Circuit's analysis. After discussing the applicability of 42 U.S.C. § 1983 to the CNMI, the Ninth Circuit in Fleming discussed the applicability of Eleventh Amendment immunity to the CNMI. Id. at 405-06. The Ninth Circuit held that because Eleventh Amendment immunity is not codified in a statute, Covenant § 501 governs the court's power to apply Eleventh Amendment immunity to the CNMI. Id. Moreover, the Ninth Circuit noted that the omission of the Eleventh Amendment from § 501, along with the specific enumeration of many amendments of the U.S. Constitution,[3] suggests that "the drafters considered fully each constitutional amendment and article for inclusion in the Covenant." Id. at 405. Accordingly, because § 501 does not provide the court with the power to apply the Eleventh Amendment to the CNMI, the Commonwealth is not afforded such immunity.

Here, defendant overlooks a crucial distinction between the Eleventh Amendment immunity analysis in Fleming and the applicability of 18 U.S.C. § 922(g)(3) in the CNMI. In Fleming, the Ninth Circuit analyzed the court's subject matter jurisdiction over Eleventh Amendment immunity under § 501 because the immunity comes directly from the U.S. Constitution and not from any statute. However, the Gun Control Act is a statute and, like  42 U.S.C. § 1983, section 502 of the Covenant, and not § 501, applies. As stated in Fleming, "[a] plain reading of the Covenant indicates a separation between constitutional and nonconstitutional provisions." 837 F.2d at 406.

Defendant's second line of reasoning suggests that the court must look at two sections of the Covenant to determine whether the court has subject matter jurisdiction: first, the court must

---

1976. Pub. L. 94-265, 90 Stat. 331. The Swine Health Protection Act, however, did not exist until 1980. Pub. L. 96-468, 94 Stat. 2229 (Oct. 17, 1980). Accordingly, § 105, and not § 502(a)(2), should have been applied to the Swine Health Protection Act.

[3] Covenant § 501 specifically enumerates the following amendments to the U.S. Constitution that apply to the Commonwealth: "Amendments 1 through 9 inclusive; Amendment 13; Amendment 14, Section 1; Amendment 15; Amendment 19; and Amendment 26; provided, however, that neither trial by jury nor indictment by grand jury shall be required in any civil action or criminal prosecution based on local law, except where required by law."

1  determine whether Congress passed the statute under any of the enumerated powers under § 501; and

2  second, the court must determine whether § 502 applies. Again, as stated above, the Ninth Circuit

3  has never required the court to conduct an analysis of § 501 before determining whether § 502

4  applies.

5        Moreover, the problem with this suggestion is that defendant confuses the application of

6  § 502 with § 105 of the Covenant. Section 105 deals with the powers of Congress to legislate with

7  respect to the CNMI. Section 502, on the other hand, does not deal with Congress' power to

8  legislate. Instead, it was drafted so that the new government of the CNMI would have a workable

9  body of federal law at the time of its inception. Herman Marcuse, <u>Covenant to Establish a</u>

10  <u>Commonwealth of the Northern Mariana Islands, Basic Document and Annotations</u> 41 - 43 (DOJ

11  1976) (collection of reports prepared by the Joint Drafting Committee on the Negotiating History,

12  Senate Committee on Interior Insular Affairs, S. Rept. 94-433, House Committee on Interior and

13  Insular Affairs, H. Rept. 94-364, the Marianas Political Status Commission ("MPSC"), and the U.S.

14  Administration). As the MPSC stated:

15        [Section 502(a)(2)] contains a formula for determining the initial manner in which
   federal laws other than the United States Constitution will apply to the Northern
16        Marianas. This formula was devised for several reasons. First, it is necessary and
   appropriate to have a full body of federal law applicable to the Northern Marianas when
17        the new Government of the Northern Mariana comes into effect. Second, it was not
   possible for the MPSC and the United States delegation to review each federal law to
18        determine whether and how it should apply. For these reasons, a formula was developed
   which is based on laws which apply both to Guam and to the states of the union. Under
19        Section 504 a Commission on Federal Laws will be established which, after a review of
   each federal law taking into account the policies of the Covenant and the local conditions
20        in the Northern Marianas, will make recommendations to Congress concerning the
   application of these laws.
21
22
23  Marcuse, <u>supra</u>, at 42 (quoting <u>To Approve the Covenant to Establish the Commonwealth of the</u>

24  <u>Northern Mariana Islands and for Other Purposes: Hearing Before the Subcomm. on Territorial and</u>

25  <u>Insular Affairs of the Comm. on Interior and Insular Affairs</u>, 94th Cong. 626-665 [hereinafter <u>MPSC</u>

26  <u>Memorandum</u>]); <u>see</u> <u>N. Mariana Islands v. United States</u>, 399 F.3d 1057, 1065 (9th Cir. 2005),

petition for cert. filed, 74 U.S.L.W. 3248 (U.S. Oct. 6, 2005) (No. 05-457) (noting that the MPSC is authoritative in discerning the meaning of the Covenant).

Furthermore, the Senate Committee on Interior Insular Affairs specifically stated that "[§ 502] does not relate to the power of Congress to legislate with respect to the Northern Mariana Islands; that issue is dealt with in section 105." Marcuse, supra, at 41 (quoting Section-by-Section Analysis of the Covenant of the Report of the Senate Committee on Interior Insular Affairs, S. Rept. 94-433 [hereinafter Senate Committee Report]). The Senate Committee Report goes on to say that § 502 was created to extend all "federal laws applicable to Guam . . . unless they are locally restricted to Guam, such as the Organic Act of Guam." Marcuse, supra, at 41 (quoting Senate Committee Report). Moreover, both the House Committee on Interior and Insular Affairs and the MPSC specified that § 502(a)(2) is a two-part test and makes no mention of an analysis of § 501 before § 502(a)(2) may be applied. Marcuse, supra, at 42-43 (quoting Section-by-Section Analysis of the Covenant of the Report of the House Committee on Interior and Insular Affairs, H. Rept. 94-364, at 5-19, and MPSC Memorandum).

While the legislative history does not directly state that all pre-Covenant laws that pass the two part analysis of § 502(a)(2), regardless of the authority Congress asserted in creating the law, are effective in the CNMI, there are many references that lead to that conclusion. First, by 1978, Congress had passed a wide variety of statutes under the Commerce Clause, and thus, the drafters of the Covenant would have been well aware of the implications that the Commerce Clause had on U.S. federal law. With this framework, the MPSC stated that the result of § 502(a)(2) "will be the application of a wide variety of federal laws to the Northern Marianas." Marcuse, supra, at 43. This suggests that the drafters meant all statutes that pass the two prong test of § 502(a)(2) are applicable to the CNMI.

Second, the MPSC Memorandum specifically mentions that laws that apply to Guam because it is a territory or possession of the United States are equally applicable to the CNMI. Marcuse, supra, at 42. The MPSC Memorandum states:

7

> The formula does not make the Northern Marianas into a territory or possession of the United States prior to termination of the Trusteeship Agreement. In many instances, however, the Northern Mariana Islands will be treated as if it were a territory or possession of the United States prior to termination, for many laws applicable to Guam because it is a territory or possession will be applicable to the Northern Marianas.

See also Marcuse, supra, at 44 (quoting Senate Committee Report). Yet, under Covenant § 501, the Territorial Clause does not apply to the CNMI. This suggests that the drafters intended that all laws, regardless of whether it was passed under the Territorial Clause, that pass the two prong test apply to the CNMI.

Accordingly, defendant's motion to dismiss for lack of subject matter jurisdiction is denied.

### B. Motion to Dismiss Count 3 As A Matter of Law

Defendant's assertion that the government, as a matter of law, cannot prove the commerce element --- that defendant "ship[ped] or transport[ed] in interstate or foreign commerce, or possess[ed] in or affecting commerce, any firearm or ammunition; or to [have] receive[d] any firearm or ammunition which has been shipped or transported in interstate or foreign commerce[,]" 18 U.S.C. § 922(g)(3), --- lacks merit.  Defendant claims that "the prosecution, as a matter of law, cannot prove the requisite nexus to commerce since the interstate commerce clause was not extended to the Commonwealth." Defendant's Reply Supporting Initial Pretrial Motions at 2 (Sept. 29, 2005). Defendant's reasoning is as follows. Defendant claims that the commerce element is a "jurisdictional hook" based on the Interstate and Foreign Commerce Clause. Defendant further asserts that because the Commerce Clause does not apply in the CNMI, the government, as a matter of law, cannot prove these facts.

The main problem with this argument is that defendant simply characterizes the commerce element as a jurisdictional hook because it contains interstate commerce activity. However, the term "jurisdictional hook" or "jurisdictional element" is simply a label, a term of art, or what some people would term, "legalese." It is simply a legal conclusion that the element is "a provision . . . that

1  requires the government to establish specific facts justifying the exercise of federal jurisdiction in

2  connection with any individual application of the statute." United States v. Rodia, 194 F.3d 465, 471

3  (3rd Cir. 1999). However, because Congress' power over the CNMI is established in the Covenant

4  and not the U.S. Constitution, the commerce element of § 922(g)(3), while a jurisdictional hook in

5  the several States, is not a jurisdictional hook in the CNMI. In the CNMI, subject matter jurisdiction

6  derives only from the Covenant. Leon Guerrero, 4 F.3d at 754 ("[T]he authority of the United States

7  towards the CNMI arises solely under the Covenant.").

8  　　　　Accordingly, for all the reasons set forth above, the court denies defendant's motion to

9  dismiss.

10

11  　　　　　　　　　　　　　　**II. Motion to Compel Discovery**

12  　　　　Defendant also moves the court to compel the government to produce all discovery materials

13  pursuant to Federal Rules of Criminal Procedure 12(b)(4)(B) and 16, Federal Rule of Evidence

14  404(b), and Brady v. Maryland, 373 U.S. 83 (1963). In addition, defendant urges that regardless of

15  whether the requested materials are required to be produced under the above authorities, the court

16  must compel the government to produce all materials requested by defendant because the

17  government, instead of making specific objections to each request, made a blanket objection to all

18  discovery materials requested by defendant that the government has not already disclosed.

19  　　　　On August 27, 2005, defendant made a request by letter for the government to make an initial

20  production of discovery materials. On September 6, 2005, the government made an initial production

21  of discovery materials ("first set of discovery materials") pursuant to the Federal Rule of Criminal

22  Procedure 16(a).  Not satisfied with these disclosures, defendant filed his motion to compel

23  discovery on September 8, 2005. On November 2, 2005, the government supplied defendant with

24  additional discovery materials ("second set of discovery materials"). Having just received these

25  materials, defendant had not yet inspected the second set of discovery materials by the time of the

26  hearing on November 3, 2005.

1    There is no question that the government must provide all discovery materials, if they exist,

2  pursuant to Federal Rules of Criminal Procedure 12(b)(4)(B) and 16, Federal Rule of Evidence

3  404(b), and Brady. What the court has to determine, therefore, is whether the government has

4  complied with the above authorities and whether defendant's specific requests fall within one of the

5  above authorities.

6    During the hearing, defendant conceded that the government has probably disclosed all Rule

7  16, Rule 404(b), and Brady materials and has complied with Rule 12(b)(4)(B) notice.[4] The

8  government has stated in its opposition brief and at the hearing that it is in compliance with its

9  discovery obligations. Furthermore, the government has stated that the investigation in this matter is

10  ongoing, and it will provide future disclosures of any new material that falls within the government's

11  duty to disclose.

12    Because these representations were made by the government's attorney as an officer of the

13  court, the court denies defendant's motion to compel the government to disclose Rule 16, Rule

14  404(b), and Brady materials and Rule 12(b)(4)(B) notice because the court finds that the government

15  has complied with its discovery obligations. However, considering that the government made the

16  second set of discovery materials available to defendant just prior to the hearing, the court will

17  entertain another motion if defendant finds that the second set of discovery materials does not

18  conform to Rule 16, Rule 404(B), Rule 12(b)(4)(B), or Brady.

19    Defendant also contends that the court must compel the government to produce all twenty-

20  three categories of materials that defendant specifically requested. Defendant asserts that such

21  motion must be granted because the government's statement in its opposition brief that "[t]he

22  Government respectfully requests that the Court deny the defendant's motion [to compel] . . .

23  because the Government is currently in compliance with its discovery obligations," Government's

24  Memorandum in Opposition to Defendant's Motions to Dismiss, for Discovery, and to Sever at 1

25  _____

26    [4] Defendant was not entirely sure that the government has complied with its discovery
obligations because defendant had not yet inspected the second set of discovery materials.

(Sept. 22, 2005), is not a formal objection to defendant's discovery requests. Defendant further argues that compliance with discovery obligations does not prevent the government from disclosing information beyond the government's discovery obligations, and that the court may compel the government to do so.

The court disagrees with defendant's assertions. First, the government made a sufficient objection to defendant's requests for disclosure. Considering the entirety of the government's opposition brief, the court considers the government's request that the court deny defendant's motion to compel as a blanket objection to all of defendant's requests for materials that the government has not yet provided. Accordingly, the court denies the defendant's motion to compel discovery of material requested by defendant that goes beyond the government's discovery obligations.

Second, defendant's argument --- that the court may compel the government to disclose further information that the government may, but is not required to, disclose --- goes beyond the essence of a motion to compel. The court will not compel a party to go beyond its duties and obligations simply because that party may, if it chooses to do so, submit to the opposing party's request. Compelling a party to do a particular act requires that that person have an obligation to do that act.

Accordingly, the court denies defendant's motion to compel discovery.

### III. Motion to Sever

Defendant moves the court to sever Count 3 from Count 1 and 2. Defendant's motion to sever under either Federal Rule of Criminal Procedure 8 or 14 does not meet the standards necessary to overcome joinder of Count 3 ("User in Possession of Firearm") with Counts 1 and 2 ("Possession with Intent to Distribute a Controlled Substance").

Rule 8(a) provides that "[t]he indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme

or plan." Fed. R. Crim. P. 8. "[T]he validity of the joinder is determined solely by the allegations in the indictment." United States v. Terry, 911 F.2d 272, 276 (9th Cir. 1990). Thus, as long as the offenses in the indictment are within the same transaction, joinder is proper. The Ninth Circuit has adopted a flexible interpretation of transaction to mean "a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." United States v. Friedman, 445 F.2d 1076, 1083 (9th Cir. 1971); see United States v. Kinslow, 860 F.2d 963, 966 (9th Cir. 1988) (interpreting transaction to mean "a series of related occurrences").

Defendant directs the court to Terry, 911 F.2d, in support of his contention that Count 3 is not within "a series of related occurrences" with Counts 1 and 2. Defendant claims that, like Terry, it is improper to join a drug charge with a firearm charge. Defendant's Memorandum Supporting Motion to Sever Trial on Count 3 at 2 (Oct. 6, 2005). However, a significant difference between the firearm charge in Terry and this case is that the firearm charge in Terry was for being a felon in possession of a firearm. 911 F.2d at 274. Thus, the facts proving that Terry was a felon did not overlap with any facts tending to prove Terry's drug charge. Here, Count 3 charges defendant as a user of a controlled substance in possession of a firearm. Unlike in Terry, the facts tending to prove that defendant was a user, an element of the gun charge, does overlap with facts tending to prove defendant's drug charge.

Most importantly, defendant's contention is flawed because defendant simply argues that a drug charge cannot be joined with a gun charge. Rather, the court must follow the Ninth Circuit's requirement that considers the totality of the indictment, such as the time and location of the event and the commonality of evidence necessary to prove the charges. Terry, 911 F.2d at 276. In this case, the indictment charges that Counts 1, 2, and 3 occurred within two consecutive days, July 15-16, 2005 and that Counts 2 and 3 occurred on the same day, July 16, 2005. The two counts in Terry, however, occurred on two separate dates, 13 days from each other and in a different city and county, id. Here, all three counts allege the same controlled substance, methamphetamine in the form commonly known as "ice." Moreover, proof of use of the controlled substance, which is an element of Count 3, may support the issue of whether defendant "unlawfully, wilfully, and knowingly

possessed" the controlled substance, because use of a controlled substance necessarily indicates that defendant possessed the controlled substance. In <u>Terry</u>, on the other hand, the evidence of the improperly joined count had no overlap with the evidence required in the other counts. <u>Id.</u> Furthermore, the factfinder will be instructed that each count must be decided separately and their verdict on one count should not control their verdict on any other count. Accordingly, Count 3 was properly joined under Rule 8. <u>Friedman</u>, 445 F.2d at 1082 (stating that unlike Rule 14, which allows the court discretion to sever the counts, Rule 8 is a matter of law).

Under Federal Rule of Criminal Procedure 14[5] severance is required as a matter of law when joinder is "so manifestly prejudicial that it outweighs the dominant concern with judicial economy and compels the exercise of the court's discretion to sever." <u>Kinslow</u>, 860 F.2d at 966-67 (quoting <u>United States v. Brashier</u>, 548 F.2d 1315, 1323 (9th Cir. 1976)). Defendant claims that "the spill over effect of the evidence relating to distribution of contraband in [C]ounts 1 and 2 will unduly prejudice the jury with respect to the elements of [C]ount 3." Defendant's Memorandum Supporting Motion to Sever Trial on Count 3 at 2. However, the Ninth Circuit has held that such "prejudicial interaction" does not meet the manifest prejudice standard of Rule 14. <u>Friedman</u>, 445 F.2d at 1083.

While the court has discretion to sever Count 3 from this trial, <u>Kinslow</u>, 860 F.2d at 966, defendant has not specifically pointed to any source of prejudice associated with the joinder. <u>See</u> <u>Friedman</u>, 445 F.2d at 1083 (holding that without "any specific source of prejudice attributable to the joinder," defendant's claim that joinder was improper lacked merit). Defendant's claim that a spill over effect will prejudice him is simply too general and amorphous. Defendant, in his reply brief, contends that joinder "exposes [him] to the unduly prejudicial risk of being convicted on [C]ount 3

---

[5] Federal Rule of Criminal Procedure 14 states, in pertinent part:

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires.

13

1  simply because he is accused of being a drug dealer." Defendant's Reply Supporting Initial Pretrial

2  Motions at 6-7 (Sept. 29, 2005). Given that the factfinder will be instructed that each count must be

3

4  decided separately and their verdict on one count should not control their verdict on any other count,

5  the court denies defendant's motion to sever.

6         IT IS SO ORDERED.

7         DATED this __8th__ day of November, 2005.

8

9                                        _Alex R. Munson_

10                                       ALEX R. MUNSON
11                                            Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26